UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOSE A. RAMIREZ, and all others similarly situated | Case No.: 08-21739-CIV-COOKE/BANDSTRA |
| Plaintiff, | |
| vs. | |
| SHARPTON BRUNSON & COMPANY, P.A. | |
| ANTHONY BRUNSON | |
| DARRYL K. SHARPTON | |
| Defendants | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, through undersigned counsel, and responds to Defendants' above-described Motion as follows:

1. This matter sounds under the Fair Labor Standards Act ("FLSA") regarding unpaid wages.

2. All of the Defendants employed the Plaintiff in a position that primarily involved bookkeeping regardless of Plaintiff's title.

3. This Court should deny Defendants' Motion for Summary Judgment as follows.

**MEMORANDUM OF LAW AND ARGUMENT**

**A. SUMMARY JUDGMENT STANDARD.**

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S.

1

317, 322 (1986). In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp., et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

**B.      THIS COURT HAS JURISDICTION PURSUANT TO THE FAIR LABOR STANDARDS ACT.**

1. Defendants have admitted Jurisdiction and Commerce can be triggered by interstate mailings.

As indicated by Plaintiff's First Request for Admissions and Defendants' Response to Plaintiff's First Request for Admission dated 8/11/08 filed with Plaintiff's Statement of Material Facts, Plaintiff propounded the following Request for Admission as #9: "Admit that the Fair Labor Standards Act applies to your business for the time Plaintiff worked for you." Defendants responded as follows: "Defendants admit to the matters set forth in Request #9 of Plaintiff's RFA."

At a calendar call on 1/12/09, the undersigned brought Defendants' admission of #9 to the Court's attention and the undersigned believes the Court was clear that Defendants are to be held to their admission.

The undersigned pointed out to the Court that recently the Court denied Plaintiff's Motion for Enlargement of the Discovery Period, and that if Defendants were not held accountable for their admission of #9 Plaintiff would need an opportunity to depose

Defendants' other employees that Plaintiff had attempted to set for deposition before expiration of the fast-track discovery deadline.

In addition, in the case of *Hodgson v. N.G. Kallas Company*, 480 F.2d 994, 995 (6th Cir. 1973), the Sixth Circuit affirmed the district court's finding that interstate commerce under the FLSA was fulfilled because the defendant-employer's business "produced tax reports with the expectation that these reports would be sent to Ohio through the mails…." *See also, Winkler v. American Sales & Management Foundation, Inc.*, 1983 U.S. Dist. LEXIS 20274, *7 (N.D. Ga. 1983)(Plaintiff was engaged in interstate commerce in that he "prepared documents to be sent out of the state of Georgia, used the United States mail to send those documents out of the state, and made telephone calls over the defendant's long-distance telephone system"); *Hodgson v. Travis Edwards, Inc.*, 465 F.2d 1050, 1053-1054 (5th Cir. 1972)("the various reports mailed to the out-of-state officers and directors and stockholders of Travis Edwards, Inc." (although alleged by defendant to be incidental) sufficient to satisfy statutory definition of commerce); *Wirtz v. A.S. Giometti & Associates, Inc. et al.*, 399 F.2d 738 (5th Cir. 1968)("surely such bulk, sent by interstate mail, from NASA at Houston to Red Stone to the Cape would constitute 'goods'" *Cf. Mitchell v. Lublin, McGaughy & Assoc.*, 1959, 358 U.S. 207, 79 S. Ct. 260, 3 L. Ed. 2d 243.)

Defendant Darryl Sharpton admitted that he is "sure" that Defendants over the years have had at least "some contact with entities outside the state of Florida." Deposition of Darryl Sharpton, P6, L15-23. The accountants employed by Defendants use the internet for work. Deposition of Darryl Sharpton, P7, L8-14.

Plaintiff's Affidavit states that: "Regarding my employment at Defendants'

3

accounting firm, based on my review of the billing reports I am certain that Defendants would electronically file the clients' taxes. Also, I personally had to send payments out of the state of Florida to the IRS for Defendants' own tax obligations. Further, my job involved making payments to Defendants' out of state vendors (including California) throughout my employment."

Defendants attempt to allege no interstate commerce, but the previously filed Exhibit from the IRS Website indicates that Tax Professionals must file their Florida clients' tax documents in Atlanta, GA. Consequently, the Court should take judicial notice that any tax filings for Defendants' Florida clients must have been sent out of state to Atlanta, GA. Fed.R.Evid. Rule 201 allows the Court to take judicial regarding that which is "generally known" or "cannot be reasonably questioned".

2. Meeting the $500,000 Threshold Greatly Relaxes the Interstate Commerce Prong.

In the instant matter, the $500,000 threshold is not disputed. Defendants admit the $500,000 prong of jurisdiction has been satisfied. Deposition of Anthony Brunson, P4, L8-10. Therefore FLSA jurisdiction may be proven by a significantly lesser showing of interstate commerce. As stated in *Galdames v. N & D Inv. Corp.,* 2008 U.S. Dist. LEXIS 73433 (S.D. Fla. 2008):

> "It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA. *See, e.g., Dunlop v. Indust. America Corp.*, 516 F.2d 498, 500-02 (5th Cir. 1975) 6 (referring to the 1961 expansion, and noting "[t]his change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character."); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("The bill also adds the word 'or materials'

after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. . . . Since 1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *Dole v. Bishop*, 740 F. Supp. 1221, 1225-26 (S.D.Miss.1990) ("[P]ursuant to a 1974 amendment, . . . in order for an enterprise to be engaged in commerce, it must have employees 'handling, selling, or otherwise working on goods or materials' that have moved in interstate commerce. This amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal citation and emphasis omitted); ***Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 U.S. Dist. LEXIS 23007, 2008 WL 793660, at \*1 (M.D.Fla. Mar. 24, 2008**) ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more . . . .")"

" Because enterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more, "the most salient element of an 'enterprise' allegation will be the amount of business a defendant does." Farrell v. Pike, 342 F. Supp. 2d 433, 439 (M.D.N.C. 2004). Cited by Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc., 2008 U.S. Dist. LEXIS 23007 (M.D. Fla. 2008).

Moreover, under the Old Fifth Circuit case of *Brennan v. Greene's Propane Gas Service, Inc. et al.*, 479 F.2d 1027, 1031 (5th Cir. 1973), *citing Wirtz v. Melos Construction Corp*, 408 F.2d 626, 629 (2nd Cir. 1969): "It is immaterial … that the goods may have 'come to rest' … before they are handled, sold or otherwise worked on by the employees in the enterprise." Thus the "commerce" prong under enterprise coverage is met when the goods are handled by the employees by virtue of the fact that the goods merely "moved across State lines at any time in the course of business, such as from the manufacturer to the distributor." *Id*. "There is no requirement of continuity" when the $500,000 monetary threshold is reached.[1]

---

[1] The current threshold is $500,000, although the threshold was $1,000,000 when the present issue was analyzed by the *Brennan* Court.

There is no "continuity" requirement that the goods continue to flow in interstate commerce before reaching the plaintiff-employees who handle such goods in the performance of their duties. The interstate commerce standard is so liberal in fact, that the goods that moved at some time in interstate commerce need not even be in the same "form"(for example raw materials such as out of state cement refined to ready-mix concrete) when used by a plaintiff-employee during the course of employment. *See, Id* at 1031, *citing Melos Construction Corp. supra,* and *Schultz v. Kip's Big Boy*, 431 F.2d 530 (5th Cir. 1970).

To further exemplify the expansive applicability of interstate commerce when the $500,000 monetary threshold is satisfied, this Court should find that "[t]he term 'materials' is neither burdened nor restricted with the 'ultimate consumer' exemption found in the 'goods' definition." *Marshall v. Davis, et al.*, 526 F. Supp. 325 (M.D. Tenn. 1981). The defendant-employer in *Marshall* therefore had to concede that adding the term "or materials" to 29 USC 203(s) eliminated any "ultimate consumer" limitations with the "practical effect of expanding coverage of the Fair Labor Standards Act to every enterprise in the nation [that satisfies the monetary threshold, presently $500,000 in the case *sub judice*]." *Id.* at 329-30. In favor of the plaintiff-employee, the Court found that the Congressional findings served a "sufficiently rational basis for the enactment of the amendments" that permitted significant broadening of the scope of enterprise coverage by adding "or materials" to 29 U.S.C. Section 203(s). *Id.* at 331.[2]

---

[2] The impact of the "or materials" amendment concerned 29.U.S.C. 203(i)'s definition of "goods" that included the "ultimate consumer" language. See, *Marshall,* 526 F. Supp. at 326. However, the amendment of subsection 203(s)'s definition of "an enterprise engaged in commerce…" that added the "or materials" language (i.e. plaintiff-employees "handling, selling, or otherwise working on **goods or materials** that have been moved in

6

In addition, the Court should also consider the following recent decisions from the Southern District of Florida: *Exime v. E.W. Ventures, Inc. et al.*, 2008 U.S. Dist. LEXIS 103797 (S.D. Fla. 2008) and *Saucedo v. Phoenix Auto Sales, Inc.*, 08-21156-CIV-ALTONAGA/BROWN (S.D. Fla. 1/5/09). In *Saucedo*, the Court in the Southern District of Florida cited the Southern District decision of *Exime* in addressing the issue of employers that utilized materials that previously moved in interstate commerce in light of end-user considerations. *Saucedo*, 08-21156 at 7. In citing *Exime*, the Court in *Saucedo* provides an in-depth analysis of the impact of the "or materials" amendment concerned 29.U.S.C. 203's definition of "goods" that included the "ultimate consumer" language. *Id*. The Court noted the relevant Senate Report's reference to "soap used by a laundry" with regard to expansion of jurisdiction. Thus, adding the "materials" language broadened FLSA jurisdiction "by substantially constricting" defense arguments based on the ultimate consumer. *Saucedo* at 8, citing *Exime*. Therefore, in *Saucedo*, the court did not require the defendants' used car sales company to actually obtain the cars or sell them directly in interstate commerce. Rather, in *Saucedo* it was sufficient that the defendant handled "automobiles that moved in interstate commerce, even though they had previously reached an ultimate consumer…." *Saucedo* at 11.

Plaintiff refers the Court to the above evidence and case law that demonstrate interstate commerce in this matter as Plaintiff was involved in interstate mailing and Defendants' firm filed taxes outside the state of Florida (and also Defendant Darryl

---

or produced for commerce") caused an apparent schism between 203(i) and 203(s). In other words, the Court found that there was no need to satisfy the "ultimate consumer" language under the "goods" definition because the plaintiff-employee could simply look to the "or materials" language that did not have an "ultimate consumer" component. The *Marshall* Court found that the seemingly redundant "or materials" amendment "clarified Congressional intent to broaden the scope of enterprise coverage."

Sharpton admitted that he is "sure" that Defendants over the years have had at least "some contact with entities outside the state of Florida."). Given that the $500,000 threshold has been met, both Plaintiff's and Defendants' direct involvement with interstate commerce is sufficient to trigger FLSA jurisdiction. Defendants admit the $500,000 prong of jurisdiction has been satisfied. Deposition of Anthony Brunson, P4, L8-10.

C. **DEFENDANTS ARE NOT ENTITLED TO ANY EXEMPTION FROM THE FLSA WAGE LAWS.**

As to the executive and administrative exemptions, under recent Eleventh Circuit case law, disputes of fact concerning the primary duty analysis (crucial to determining the executive and administrative exemptions) must be determined by the jury. *See, Rodriguez et al. v. Farm Stores Grocery, Inc. et al.*, 2008 U.S. App. LEXIS 4817, *11 (11th Cir. 2008)(see the Court's analysis as to all the evidence considered by the jury regarding primary duty). As set forth below, Plaintiff states that his primary duty does not fall under either exemption.

**Exemptions are Construed Strictly against the Defendant-Employers**

The Eleventh Circuit has long held that exemptions under the Fair Labor Standards Act are to be construed strictly and narrowly in favor of coverage of employees, affording maximum coverage to the employees due to the broad remedial purpose behind the Act. Nicholson v. World Business Network, Inc., 105 F.3d 1361 (11th Cir. 1997). Presumably, this is why the Eleventh Circuit articulated the rule in Klinedinst v. Swift Investments, Inc., 260 F.3d 1251 (11th Cir. 2001) that employers must prove FLSA exemptions by "clear and affirmative" evidence.

8

An employee's job title is irrelevant in determining whether he or she is exempt as an "executive" under the FLSA. Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1075 (1st Cir. 1995). 29 C.F.R. §541.2 expressly states: "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."

**Prongs of the Executive Exemption.**

An employer must be able to show that each exempt executive employee meets every requirement of the executive exemption test. Pezzillo v. Gen. Tel. & Electron. Inform. Sys. Inc., 414 F. Supp. 1257 (M.D. Tenn. 1976). An employee is subject to the executive exemption under the FLSA if the employer proves: (1) the employee earns at least $455.00 per week, (2) the employee's primary duty consists of the management of an enterprise or of a department thereof, (3) that the employee customarily and regularly directs the work of two or more other employees, and (4) the employee has authority to hire or to fire other employees.

The following work has been considered to be exempt when performed by an employee who manages a department:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay; directing their work; maintaining their production or sales records for use in supervision or control,; appraising their productivity and efficiency for purposes of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials; supplies, machinery, or tools to be used or merchandise to be bought, stocked or sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and of the property.  29 C.F.R. 541.102. **[R, 1-35]**.

"The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. §541.700(b).

When an employee does not spend more than 50% of the work day engaged in managerial duties, courts have used four other pertinent factors in determining if management is nevertheless his primary duty:

(1) The relative importance of managerial duties as compared with other types of duties.
(2) The frequency with which the employee exercises discretionary powers.
(3) His relative freedom from supervision.
(4) The relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the supervisor. 29 C.F.R. 541.103 (Revised 8/23/04).

> "Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more then 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement." 29 C.F.R. 541.700 (c).

One way to prove that management was Plaintiff's primary duty is to establish that he spent 50 percent of his time performing management functions. According to 29 C.F.R. 541.700(b), generally speaking, an employee who spends over 50 percent of his

time in management would have management as his primary duty. An employee who does not spend more than 50 percent of the work day engaged in managerial duties, might nevertheless have management as his primary duty if the other factors support such a conclusion. 29 C.F.R. 541.700(b). Such has not been proven by the defense in the instant matter. Whether a particular employee or group of employees has management as his/her primary duty must be based on all the facts in a particular case. 29 C.F.R. 541.700(a).

To customarily direct the work of two or more employees is a prerequisite for the executive exemption. See 29 C.F.R. 541.1 and 541.105. Defendants cannot sufficiently demonstrate such as Plaintiff disputes same herein. See Secretary of Labor v. Daylight Dairy Products, Inc., 779 F.2d 784 (1st Circuit 1985).

Defendants also fail their burden under the 80-hour rule. As stated by the First Circuit, a manager who meets the 80-hour rule only 76% of the time falls short of the requirement to customarily and regularly supervise 80 employee-hours of work. Secretary of Labor v. Daylight Dairy Products Inc., 779 F.2d 784 (1st Cir. 1985). In the instant case, Plaintiff's Affidavit testifies that his job did not satisfy the 80 hour rule.

The courts have used two other methods in trying to reach the *80 hour rule* in trying to determine whether the executive exemption applies: whether a plaintiff-employee supervised any employees after their work shift ended, or whether they were on call after leaving work. Under either scenario, the 80 hour rule is disputed by Plaintiff (and thus Defendants' exemption burden has not been met). See Jackson v. Go-Tane Services, Inc., 2000 U.S. Dist. Lexis 12627 (Dist. Il. 2000). Also see Krieg v. Pell's Incorporated, 2002 U.S. Dist. Lexis 4861 (Dist. Indiana 2002) (eighty hour rule applies

both during and after "manager's" shift.) Also see <u>Herman v. Harmelech et.al</u>., 2000 U.S. Dist. Lexis 5523 (Dist. Il., 2000) (the employer must prove the eighty hour rule on a week by week basis rather than averaging all employees who were supervised over a broad span of time.)

Plaintiff's Affidavit states that: "As set forth in the Complaint, although I was given various job titles while employed by Defendants, my primary duty involved working as a bookkeeper. Particularly, my bookkeeping duties consisted of paying vendor bills, processing firm invoices and printing out the firm's financial reports (I did not create those reports but rather printed them out from the firm's software). I estimate 80% or more of my time was spent performing the said bookkeeping duties." "My primary duty consisted of bookkeeping as stated above. I did not manage Defendants' company. I did not regularly direct the work of (2) or more other employees, and did not supervise the equivalent of (80) hours of work weekly performed by Defendants' other employees. I did not have authority to hire or to fire other employees." "During my employment with Defendants I did not have another job, and I was completely financially dependant on Defendants." "My primary duty did not involve implementing management policies or business operations or making decisions regarding same. Further, I did not regularly exercise discretion and independent judgment regarding management issues or business operations. My job did not consist of performing special tasks or assignments while executing decision-making authority, but rather I primarily performed the standard bookkeeping tasks stated above. I did not spent 80% of my time performing tasks relating to the administration of Defendants' business, but rather spent 80% or more of my time performing the said bookkeeping activities." Under the stated

case law above, there is at the least a genuine issue as to Plaintiff's primary duty requiring a jury determination regarding same.

In his Opposition, Plaintiff does not dispute Para. 5 of Defendants' Material Facts, but points out he responded "That is what I thought" when questioned if he was hired for something other than a bookkeeper. See filed with Defendants' Motion, Plaintiff's Deposition at P45, L17-25. Plaintiff thus was led to believe he was hired for something other than a bookkeeper, but upon be hired his primary duty was bookkeeping. The question in this case is what Plaintiff's primary duty actually was, not what Defendants said it would be at the interview stage. Similarly Plaintiff does not dispute Para. 6 of Defendants' Material Facts, but again the question in this case is what Plaintiff's primary duty actually was, not what Defendants may have said it was at an introductory meeting. Plaintiff disputes the "day-to-day" allegations in Para. 13 as the page range of Plaintiff's deposition (113-121) does not appear to use such language. Plaintiff also refers to Para. 3 above in arguing that his primary duty was bookkeeping and he did not primarily work as a Firm Administrator. Further, Plaintiff stated in deposition that he was not the person responsible for contacting the vendor to resolve the firm's computer problems. Plaintiff was not the contact person regarding the firm's technological issues. Plaintiff Deposition, P111, L19-25; P112, L9-14. Plaintiff disputes Para. 8 of Defendants' Statement of Facts, and refers to Para. 3 of Plaintiff's Statement of Facts as Plaintiff did not actually work as a Firm Administrator per applicable law. For example, regarding the dress code, Plaintiff in his deposition clarified that he was simply stating what Defendant Sharpton told him to communicate. Plaintiff Deposition, P113, L20-21. As Plaintiff's Motion for Summary Judgment indicates Plaintiff did not supervise (2) or more

employees and spent 80% or more of his time on bookkeeping-related duties. Regardless of whether Defendants may be able to glean examples of tasks that appear to be administrative or executive, Plaintiff's job simply did not involve <u>primarily</u> executive and/or administrative duties. Plaintiff clarified any file maintenance he was involved with basically involved filing "memos." Plaintiff's deposition, P93, L19-25.

### Prongs of the Administrative Exemption.

The evidence also demonstrates Defendants are not entitled to the administrative exemption. To qualify for the administrative exemption, Defendant must show Plaintiff's primary duty related to "management policies or general business operations", that Plaintiff regularly exercised "discretion and independent judgment", that he executed special assignments under only general supervision, and that Plaintiff's tasks were "directly and closely related" to administration of the Defendants' business. *Hogan et al. v. Allstate Insurance Company*, 361 F.3d 621, 626 et seq. (11th Cir. 2004). Primary duty is an element under both the long and short test. *Id. See also, Gottlieb v. Construction Services & Consultants, Inc.*, 2006 U.S. Dist. LEXIS 97446 (S.D. Fla. 2006). Plaintiff's Affidavit raises at least a genuine issue that regardless of any title assigned by Defendants, and his primary duty was bookkeeping that did not involve executive authority or administrative operation. Among the other disputed paragraphs above (including those in Plaintiff's Statement of Facts), Plaintiff disputes Para. 14 of Defendants' Statement of Facts to the extent Plaintiff did not actually work as a Firm Administrator per applicable law regardless of title. Plaintiff did not state at page 73 of his deposition that he administered operations. Regarding Plaintiff's expertise, Plaintiff's Affidavit indicates "my bookkeeping duties consisted of paying vendor bills, processing

firm invoices and printing out the firm's financial reports (I did not create those reports but rather printed them out from the firm's software)."

WHEREFORE, THE PLAINTIFF REQUESTS THAT THE COURT DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, FIND FLSA JURISDICTION AND AT THE LEAST PERMIT THE JURY TO DECIDE THE EXEMPTION ISSUES PER THE ABOVE CASE LAW.

**Respectfully submitted,**

**K. DAVID KELLY, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: KRL_KELLY@YAHOO.COM**
**F.B.N. 0123870**
**BY:____/s/ K. David Kelly_____**
**K. DAVID KELLY, ESQ.**

**CERTIFICATE OF SERVICE**:

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED SUBSEQUENT TO E-FILING TO:**

**SIDNEY CALLOWAY, ESQ.**
**SHUTTS & BOWEN LLP**
**1500 MIAMI CENTER**
**201 SOUTH BISCAYNE BLVD.**
**MIAMI, FL 33131**
**FAX: 954.524.5506**

**BY:____/s/ K. David Kelly_____**
**K. DAVID KELLY, ESQ.**